IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 1:07-CV-334-WYD-CBS

CAPITAL INVESTMENTS-USA, INC.,

    Plaintiff ,

v.

KEYBANK NATIONAL ASSOCIATION,
    Defendant.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Defendant's March 19, 2007 Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which was converted to a Rule 56 Motion for Summary Judgment by my Order filed on April 18, 2007. At issue are Plaintiff's claims against Defendant for Breach of Contract and Negligent Misrepresentation. Defendant has moved for summary judgment pursuant to the Colorado Credit Agreement Statute of Frauds, C.R.S. § 38-10-124(2). For the reasons stated below, Defendant's Motion to Dismiss (converted to a Motion for Summary Judgment) is granted.

II.    <u>BACKGROUND</u>

This case arises from Commodities Agreements entered into by Capital Investments-USA, Inc. (hereinafter "Capital" or Plaintiff) with various third parties.

According to Plaintiff, in late 2005 and early 2006 Plaintiff entered into numerous agreements (hereinafter "Commodities Agreements")[1] with various third parties (hereinafter "Purchaser") whereby Plaintiff committed to providing large quantities of commodities to the same third parties. Plaintiff asserts that prior to each shipment, the Commodities Agreement required the Purchaser to provide an operative or negotiable letter of credit from a credible banking institution sufficient to cover 100% of the purchase price. The letter of credit was to be provided directly to Plaintiff's bank and held for Plaintiff's benefit.

Plaintiff asserts that prior to and coincident with the entry of the Commodities Agreement, Plaintiff had secured agreements with various sellers to provide the commodities at a fixed price which would evidence that Plaintiff had the ability to perform its obligation to the buyer. In turn, Plaintiff states that it would provide the seller with a "non-operative letter of credit," which was negotiable only upon receipt, inspection and third-party insurance of the product. In exchange for the "non-operative letter of credit," Plaintiff claims that the seller would agree to post a performance bond to cover the cost of doing business to both Plaintiff's bank and the buyer in the event that the seller was unable to produce the product.

Plaintiff alleges that the Defendant, KeyBank National Association (hereinafter "KeyBank" or Defendant), through a series of conversations and emails, agreed to facilitate these Commodities Agreements by providing letters of credit. Capital alleges

---

[1] The term "Commodities Agreements" is the phrase Plaintiff uses to describe such agreements in its Complaint.

that KeyBank personnel Christopher Frazier, Manual Martinez, and Timothy Schipke made several oral representations that KeyBank would agree to facilitate the commodities agreements by providing letters of credit. Defendant disputes that it agreed to facilitate these agreements. Capital points to a February 8, 2006 email from Schipke to Capital principal Daniel Overmyer, which read in pertinent part:

> It was a pleasure meeting you today, and thank you for the information provided on the structure of your prospective transactions. I really have no specific comments at this point, but would like some more detail regarding the issuing bank(s). I also understand that SunTrust Bank is involved, and would like to better understand their role and involvement. All of the l/c's will be processed through our Seattle Operations office. As you we closer [sic] to actually advising the letters of credit for you, I [sic] would like to make the introduction of our Ops Manager to the appropriate people on your end.
>
> I have attached two documents for your review prior to our meeting tomorrow. One is our letter of credit instructions to be provided to the seller. The other is the most recent pricing schedule for our International Services.

See Motion to Dismiss, ¶ 13 fn2; Complaint, ¶ 14. Capital also submitted evidence of several emails dating from January 17, 2006 to February 22, 2006 from Keybank's Frazier to unknown parties (most of these emails are addressed "To Whom it May Concern," though some are addressed to a specific company). Capital asserts that most of these emails confirm that Capital had the ability to procure certain goods. One of such emails states that Capital and POP trading corporation are "free from liens and penalties with Key Bank and has proven to be reliable and capable of fulfilling its assumed liabilities." *See* Complaint, ¶ 25. On February 24, 2006, Capital completed and returned to Keybank an application for a $41,600,000 revolving line of credit.

During the week of either February 27, 2006 or March 6, 2006, KeyBank advised Capital that KeyBank would not facilitate the commodities transactions in the manner which Capital asserts that KeyBank had previously agreed. On January 19, 2007, Plaintiff filed a Complaint against Defendant alleging breach of contract and negligent misrepresentation. On February 15, 2007, Keybank removed this case from state court to federal court.

On March 19, 2007, Defendant filed a Motion to Dismiss for Failure to State a Claim asserting that Plaintiff's claims are barred by the Colorado Credit Agreement Statute of Frauds, C.R.S. 38-24-124, which bars all claims relating to credit agreements involving a principle amount in excess of twenty-five thousand dollars unless such agreement is in writing and signed by the party against whom enforcement is sought. Because matters outside the pleadings were considered by this Court, Defendant's motion was converted to a Rule 56 Motion for Summary Judgment, pursuant to Rule 12(d) by my prior order dated April 18, 2007.

III. ANALYSIS

    A. Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190

(10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

"In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate procedural question of whether judgment as a matter of law is appropriate." *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006)(citing *Gust v. Jones,* 162 F.3d 587, 593 (10th Cir. 1998). Therefore, the substantive law of Colorado applies and governs.

### B. Colorado Credit Agreement Statute of Frauds

Turning to the merits of Defendant's argument, the Colorado Legislature has declared that "no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand

dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought." C.R.S. § 38-10-124(2). Colorado defines a credit agreement as

> (I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;
>
> (II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and
>
> (III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

C.R.S. § 38-10-124(1)(a). Finally, the statute provides that "*A credit agreement may not be implied under any circumstances*, including, *without limitation*, from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel. C.R.S. § 38-10-124(3)(emphasis added).

Before addressing whether there was a signed credit agreement for the purposes of this summary judgment motion, it is important to note that there is no material dispute as to the existence of the documents relied on by the Plaintiff–the only dispute is whether the documents relied on by the Plaintiff are sufficient to constitute a written credit agreement.[2] Plaintiff does not contend that a single document exists

---

[2]The parties do not appear to dispute that, for purposes of the statute, Keybank is a creditor, that Capital is a Debtor, and the 'agreement' Capital is seeking to enforce meets the definition of a credit agreement under the statute or that it is for more than

-6-

which by itself would constitute a written credit agreement that has been signed by the Defendant. The Plaintiff instead argues that "one integrated writing is not necessary to satisfy the statute of frauds" and that multiple documents together, "provided some nexus between the documents is shown," may satisfy the writing requirement of the statute of frauds. *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, at 9; *Bennett v. Moring*, 522 P.2d 741, 743 (Colo. App. 1974). Plaintiff further argues that C.R.S. § 38-10-124 only requires a "written promise, undertaking or commitment" to establish the existence of a credit agreement, and does not require particular terms be included in the credit agreement.

In summary, Plaintiff argues that taken together, the commitment letters, Timothy Schipke's emails, and "various other documents provided by Keybank to Capital collectively constitute a 'promise, undertaking [and] commitment to...extend...credit, or make [a] financial accommodation." *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, at 11. Plaintiff's rationale is that the commitment letters from KeyBank to suppliers must evince KeyBank's willingness to provide Capital a line of credit because Capital, itself, did not have sufficient capital to effect those transactions. Plaintiff asserts that KeyBank must have had knowledge of Plaintiff's lack of resources before confirming Capital's ability to pay, thus when confirming in the letters that Plaintiff had capital KeyBank must have intended to provide credit to

---

twenty-five thousand dollars. To the extent that there is any dispute, I find that Keybank is a creditor, Capital is a debtor, and that the transaction in question would constitute a credit agreement for purposes of the statute and that the credit agreement is for more than twenty-five thousand dollars.

Capital. Although Plaintiff may be correct in its assertion that the statute does not require particular terms to be included in the signed written credit agreement, the statute does require a writing that establishes a credit agreement and the statute explicitly mandates that credit agreements *"may not be implied under any circumstances"*. C.R.S. § 38-10-124(3)(emphasis added). I also note that Plaintiff has pointed to no Colorado case law allowing the writing requirement of the Colorado Credit Agreement Statute of Frauds to be satisfied with multiple writings, but instead relies on the standard Statute of Frauds, from which the Credit Agreement Statute of Frauds differs greatly. I must broadly apply C.R.S. § 38-10-124 "to give effect to its central purpose of promoting certainty in credit agreements made by members of the credit industry." *Premier Farm Credit, PCA v. W-Cattle, LLC*, 886 P.2d 299, 301-302.

Taken in the light most favorable to the Plaintiff, I find that the documents relied on by the Plaintiff do not satisfy the written agreement requirement of the Colorado Credit Agreement Statute of Frauds. The Plaintiff asks me to imply the existence of a written credit agreement signed by the Defendant from various emails and documents given to Plaintiff by Defendant. Even, assuming *arguendo*, that the statute allowed a credit agreement to be implied from various writings, the documents relied on by Plaintiff are insufficient to establish such an agreement. Most telling is the application for a $41,600,0000 revolving line of credit, which Plaintiff completed and returned to Defendant, and which Defendant ultimately rejected. Viewed in the light most favorable to the Plaintiff, I find that there exists no genuine issue of material fact, that the documents relied on by the Plaintiff to establish the credit agreement do not constitute

a written promise, undertaking, or commitment to extend credit or make a financial accommodation to the Plaintiff within the meaning of the controlling Colorado statute.

Plaintiff argues that its negligent misrepresentation claim does not rely on the credit agreement, but rather the claim only relies on the Commitment letters, Mr. Schipke's emails and the various documents provided by Keybank to Capital Investments, by themselves and without reliance on any other form of evidence. However, these documents are the very same documents which Plaintiff argues establish the credit agreement it is attempting to enforce.

The Colorado Credit Agreement Statute of Frauds precludes actions attempting to enforce an unsigned credit agreement involving a principal amount in excess of twenty-five thousand dollars and any other claims relating to such an agreement. *See Univex v. Orix Alliance,* 914 P.2d 1355, 1358 (Colo. 1996); *Schoen v. Morris,* 15 P.3d 1094 (Colo. 2000); *Northwest Bank Lakewood, National Assoc. v. GCC Partnership*, 886 P.2d 299, 302 (Colo. App. 1994)(holding that "the plain language of the statute thus precludes the actions here for breach of fiduciary duty and for negligent or fraudulent misrepresentations based upon parol credit agreements involving a principal amount over $25,000," and rejecting defendant's argument that "the statute does not preclude actions sounding in tort"); *Lang v. Bank of Durango*, 78 P.3d 1121, 1122-1123 (Colo. App. 2003)(finding that C.R.S. § 38-10-124 bars claims of negligent misrepresentation and fraud").

Accordingly, Plaintiff's argument is rejected. Colorado law clearly holds that the

Colorado Credit Agreement Statute of Frauds bars claims relating to an unsigned credit agreement for over $25,000.00, including negligent misrepresentation claims. Here, for the reasons stated above, I find that no such agreement was signed by the Defendant, therefore summary judgment is appropriate. I find, as a matter of law, that because Plaintiff's breach of contract claim and negligent misrepresentation claims relate to an unsigned credit agreement between the parties for an amount greater than twenty-five thousand dollars ($25,000.00) the claims are precluded by the Colorado Credit Agreement Statute of Frauds, C.R.S. § 38-10-124(3) and the case law interpreting its meaning.

IV.  CONCLUSION

It is hereby

ORDERED that Defendant's Motion to Dismiss (Converted to a Motion for Summary Judgment), filed March 19, 2007 (docket # 7) is **GRANTED**. It is

FURTHER ORDERED that this case is **DISMISSED WITH PREJUDICE**.

Dated: March 24, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge